59818. McFARLAND et al. v. KIM.

McMURRAY, Presiding Judge.

This action arises from the sale of a dry cleaning and laundry business. The business in question is located in leased premises. The lease made on March 28, 1969, between C & G Memorial, Inc., as landlord, and plaintiffs, as tenants, in this action provides for a term of ten years at a minimum rental of $666.67 per month, with provisions for additional rent should ten percent of the gross sales of the business exceed the minimum rent in any lease year. The lease also provides the option of a five year renewal at a rental of $733.33 per month provided specified notice is given the landlord and that tenants' gross sales for the last two years of the lease exceeded or equalled a specified amount.

Negotiations for the purchase of the business by Yong Ho Kim, a former Korean national who had immigrated to the United States in 1973 and is now a United States citizen, were effected through the medium of Mrs. Jeanie Kim, a real estate agent, who apparently understands the Korean language but presumably unrelated to the defendant. After some negotiation with offers and counteroffers being made between plaintiffs and defendant, a contract for the purchase of the business was entered into by the parties to this lawsuit. Defendant's obligation under the contract for the sale of the business was conditioned upon "the execution of a new lease or sublease between the owner of the premises occupied by said business and the BUYER [defendant] in form and content substantially the same as the Standard Commercial Lease Contract attached as Exhibit A for a period of 5 years at a monthly rental of $733.33." Under the terms of the agreement the conditions, including that as to the execution of a new lease or sublease between defendant and the owner of the premises, could be waived by the defendant.

Subsequently the parties had a closing on the agreement of sale, and the parties entered into an installment sale and security agreement, and defendant gave his note for the balance due under the agreement. At the time of the closing there was no lease or sublease by the landlord C & G Memorial, Inc., to defendant, nor any grant of permission by the landlord for lease or sublease to defendant in existence.

After the date of the closing defendant sought to procure such an assignment including provisions that would have permitted him the use of the premises for an additional five years at the rent of $733.33 per month. The landlord declined to enter such an agreement, and the defendant ceased making payments to the landlord and to the plaintiffs on the note executed in conjunction with the closing of the sale of the business. Plaintiffs brought this action to enforce collection of defendant's note given in payment of the business. Defendant counterclaimed, alleging fraud and deceit in the procurement of the contract. The case was tried before a jury who returned a verdict in favor of defendant, awarding compensatory and punitive damages and attorney fees. Plaintiffs appeal. *Held:*

1. Plaintiffs contend that the evidence presented at trial on behalf of defendant was not sufficient to support a finding of fraud by the plaintiffs. Therefore, they contend their motions for directed verdict and for judgment notwithstanding the verdict or, alternatively, for a new trial should have been granted. In support of this contention plaintiffs raised several arguments to the effect that they made no false representations to the defendant or Mrs. Kim, the real estate agent involved in the transaction, and that if any false

representations were made they were in regard to future events and cannot form the basis of an action based on fraud. The plaintiffs further argue that if there is evidence of their having made false representations of a past event or present fact, such representations were not made with the intent to deceive or defraud the defendant, were not relied on by the defendant and if such were the case the harm done to the defendant was the result of his failure to exercise reasonable diligence to prevent occurrence of the fraud.

Contrary to plaintiffs' contention, evidence was presented as to each of the elements of fraud. See in this regard *Hardy v. Gordon,* 146 Ga. App. 656, 657 (247 SE2d 166).

Particular mention should be made that a misrepresentation of a present state of mind is actionable as fraud. *Floyd v. Morgan,* 62 Ga. App. 711, 715 (5) (9 SE2d 717). Compare *Cheney v. Barber,* 144 Ga. App. 720, 721 (242 SE2d 358).

Therefore, if the plaintiffs represented to the defendant that they would sign a guarantee of defendant's obligations under the lease, knowing that they had no intention of ever doing this in the future this would not be a broken promise as to a future act but would be a misrepresentation of a present state of mind and actionable as fraud. Fraud is subtle and difficult to detect, but the failure of the plaintiffs to sign such a guarantee when presented to them by the landlord is some evidence that they had no intention at any time to complete that act. The verdict in favor of the defendant on the counterclaim is supported by evidence, and this enumeration is without merit.

2. Plaintiffs contend that their Exhibit 8 was erroneously excluded from evidence. This document was a lease assignment under which defendant would undertake to perform the duties of the tenant under the lease in question and the plaintiffs would undertake to "remain responsible for any default during the original term and extension of Lease." The document bears defendant's signature, but plaintiffs refused to sign due to their objection to the obligation which they would undertake by signing the document, arguing that the terms of this agreement were inconsistent with their intent in originally promising to sign a guarantee for defendant's performance under the lease. As the refusal of the plaintiffs to sign this document may have been a key element in the jury's determination that the plaintiffs were guilty of fraudulent conduct toward the defendant, the rejected language was relevant to the issues before the trial court, and this document should have been admitted in order that the jury consider this language in determining whether the refusal to sign the document was evidence of a misrepresentation by plaintiffs to defendant when they had promised to sign a guarantee of his

performance under the lease. The trial court erred in excluding Exhibit 8.

3. The trial court admitted into evidence over plaintiffs' objection defendant's Exhibit 2, a letter prepared by the attorney handling the closing, for the signature of the landlord's representative and addressed to plaintiffs. The landlord's representative rejected the letter and did not sign due to an objection to the language therein. This document which set forth proposed terms under which the landlord would allow assignment of the lease from plaintiffs to defendant was properly admitted into evidence for the same reason as plaintiffs' Exhibit 8 should have been allowed in evidence, as set forth in Division 2 herein, so as to illustrate to the jury the intent of the parties as to the transaction.

The landlord, although not a party to this action, is heavily involved in the events resulting in the case sub judice. Defendant's Exhibit 2, particularly when compared to and in contrast to plaintiffs' Exhibit 8, may have aided the jury in analyzing the actions taken by the landlord and their impact on the parties sub judice. Defendant's Exhibit 2 was relevant to the issues before the trial court and properly admitted. The document was relevant and material, and the court did not err in allowing it in evidence.

4. Over plaintiffs' objection the defendant was allowed to testify through an interpreter. The plaintiffs contend that the evidence indicates defendant has sufficient command of the English language so that he should not have been allowed to testify through an interpreter. This matter, however, was one for the discretion of the trial court and it does not appear that such discretion has been abused. *Hensley v. State,* 228 Ga. 501 (1) (186 SE2d 729).

5. In the trial court plaintiffs did not make the objections to the charge which they raise on appeal. As there is no substantial error harmful as a matter of law this enumeration of error is without merit. Code Ann. § 70-207 (Ga. L. 1965, pp. 18, 31; 1966, pp. 493, 498; 1968, pp. 1072, 1078). See *Cassier v. Golden,* 151 Ga. App. 618, 619 (2) (260 SE2d 750). Although not objected to at trial, any alleged error involving the trial court's charge on "proper diligence" contra to the holding in *Jim Walter Corp. v. Ward,* 245 Ga. 355, 357 (265 SE2d 7) is not likely to occur on the retrial of the case sub judice.

*Judgment reversed. Deen, C. J., Quillian, P. J., Shulman, Banke, Birdsong, Carley and Sognier, JJ., concur. Smith, J., dissents.*

ARGUED MAY 7, 1980 — DECIDED NOVEMBER 18, 1980 —
REHEARING DENIED DECEMBER 10, 1980 —

*Garland B. Cook, J. David Cook,* for appellants.

*Thomas C. Bianco, John C. Carbo, III, Matthew O. Simmons,* for appellee.

SMITH, Judge, dissenting.

I agree with the conclusions reached in Divisions 1, 3, 4 and 5 of the majority opinion. However, I cannot believe that the failure to admit the lease assignment constitutes reversible error.

The lease assignment provides: "Agreement made this 11th day of December, 1978, by and between W. M. & E. R. McFarland (hereinafter referred to as Tenant), and F. P. Plaza, Inc., and its agent, Candler & Griffith (hereinafter referred to as Landlord) . . .

"1. F. P. Plaza, Inc. hereby agrees and consents to the assumption of a certain Lease entered into on the 28th day of March, 1965 . . . by Yong Ho Kim, as assignee for the property.

"2. That Yong Ho Kim agrees to pay rents called for by the said lease and to abide by the conditions thereof and to fully perform all obligations to be performed by the Tenant of said Lease.

"3. That W. M. & E. R. McFarland will remain responsible for any default during the original term and extension of lease." Appellants contend that their refusal to sign the lease assignment was not motivated by a fraudulent intent, but was an exercise of their "sound business discretion." They contend that "appellants had never promised or suggested that they would remain liable on the extension of the original lease." The lease assignment "would have obligated the appellants to remain responsible for any default . . . " "Unfortunately," appellants argue, "the jury never got a chance to see the document . . ."

While the jury may not have seen the document, they unquestionably were aware of its contents. Particularly noteworthy is the testimony of appellant William McFarland: "Q. I show you an instrument denoted Plaintiff's Exhibit Number 8 which denotes itself as a lease assignment. Do you recognize that as an instrument that was presented to you sometime after the closing as to the assignment of this lease? A. Yes, sir, Q. And at that time, did you refuse to sign it? A. Yes, sir. Q. Why did you refuse to sign it, Mr. McFarland? A. Because that would put us liable for five more years in case Mr. Kim didn't operate, or closed the place up." It is apparent that the jury was informed of the assertedly objectionable portion of the lease assignment. At no point in the trial was appellant's testimony regarding the contents of the lease assignment disputed. See *Nesbit v. Nesbit,* 241 Ga. 351 (245 SE2d 303) (1978). Thus, even assuming its relevancy, any error in the exclusion of the lease assignment was necessarily harmless. See CPA § 161 (Code Ann. §

81A-161); *White v. Hammond,* 129 Ga. App. 408, 410 (199 SE2d 809) (1973).